[Cite as *State ex rel. Kenney v. Toledo*, 2018-Ohio-1737.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State, ex rel. Donald Kenney, Jr., et al.        Court of Appeals No. L-17-1149

    Appellees/Cross-Appellants        Trial Court No. CI0201503316

v.

City of Toledo        **DECISION AND JUDGMENT**

    Appellant/Cross-Appellee        Decided: May 4, 2018

* * * * *

Catherine H. Killam and R. Kevin Greenfield, for appellees/cross-appellants.

Dale R. Emch, Law Director, and Adam W. Loukx, for appellant/cross-appellee.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant/cross-appellee, the city of Toledo, appeals the May 23, 2017 judgment of the Lucas County Court of Common Pleas denying the city's motion for summary judgment, granting summary judgment to appellees/cross-appellants, Donald

Kenney Jr., Michael Murphy, Derrick Diggs, George Taylor, and Diana Ruiz Krause (collectively "relators"), on their claim that they are entitled to payments for pension pick-ups, and issuing a writ of mandamus ordering the city to pay relators' pension pick-ups. Relators filed a cross-appeal of the trial court's denial of their motion for summary judgment and denial of a writ of mandamus on their claim that they are entitled to payments for health insurance premiums. For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} Relators were Deputy Police Chiefs with the Toledo Police Department during the period from September 3, 2009, to March 15, 2012. Unlike Police Captains and other command officers, Deputy Police Chiefs are not represented by the Toledo Police Command Officers' Association ("TPCOA").

{¶ 3} During that same time period, a collective bargaining agreement ("CBA") between Toledo and the TPCOA required the city to make two payments relevant to this appeal: (1) the CBA required Toledo to pay (i.e., to "pick up") the entire employee portion (10 percent) of Police Captains' pension contribution to the Ohio Police & Fireman's Disability and Pension Fund, and (2) the CBA required Toledo to pay specified portions of Police Captains' health insurance premiums.

{¶ 4} Under Toledo Municipal Code 2101.70(a), "Police Deputy Chiefs shall automatically receive any pension pick-ups, lump sums, and allowances on the same basis as those provided to Police Captains as part of the Captains' total compensation." Essentially, this dispute centers on whether Toledo Municipal Code 2101.70(a) requires

2.

Toledo to pay relators, as Deputy Police Chiefs, the same pension pick-ups and health insurance premiums that were owed to Police Captains under the CBA during the relevant time period.

{¶ 5} Until September 3, 2009, Toledo paid the entire 10 percent share of pension pick-ups for both relators and Police Captains. The city reduced its pension pick-ups for relators to 3 percent beginning on September 3, 2009, because the then-mayor, Michael Bell, declared that Deputy Police Chiefs were exempt employees not subject to the CBA. At that time, Toledo continued to pay the full 10 percent pension pick-up for Police Captains.

{¶ 6} On March 30, 2010, however, Toledo City Council passed Ordinance 103-10, which "declar[ed] the existence of exigent circumstances compelling immediate action" due to the "unforeseen and unforeseeable" sharp decline in the city's general fund revenues. To address this "fiscal crisis," Ordinance 103-10 unilaterally changed certain benefits that Toledo provided to TPCOA members under the CBA, as well as some benefits that Toledo provided to city employees, effective April 1, 2010. Relevant here, the ordinance completely eliminated pension pick-ups for both Police Captains and Deputy Police Chiefs, and increased the amount that Police Captains and Deputy Police Chiefs were required to contribute to the cost of their health insurance. Although these "exigent circumstance" measures were repealed in May 2011, Toledo did not pay relators' pension pick-ups or health insurance premiums on the same basis as TPCOA members until May 12, 2012.

3.

**{¶ 7}** Ordinance 103-10 sparked a protracted legal battle between Toledo and the TPCOA, including a federal action by the TPCOA against the city alleging that Toledo had violated 42 U.S.C. 1983, *Toledo Police Command Officers' Assn. v. Toledo*, Case No. 3:12-CV-00787 (N.D. Ohio); another action in Lucas County Common Pleas Court in which the TPCOA successfully received an order compelling Toledo to arbitrate the "exigent circumstances" dispute, which was later upheld by this court in *Toledo Police Command Officers' Assn. v. Toledo*, 6th Dist. Lucas No. L-13-1022, 2014-Ohio-4119; and yet another action stemming from an unfair labor practice charge that the TPCOA filed against Toledo with the State Employment Relations Board ("SERB"), which was appealed to the Lucas County Common Pleas Court and, ultimately, this court in *Toledo Police Command Officers Assn. v. State Employment Relations Board*, 6th Dist. Lucas No. L-13-1074, 2014-Ohio-4341. In that case, we affirmed the trial court's decision that Toledo had not bargained with the TPCOA in good faith as required by R.C. 4117 and the city was not entitled to unilaterally modify the CBA, that the exigencies cited in Ordinance 103-10 were foreseeable at the time the parties negotiated the CBA, and that the midterm changes should be rescinded, the parties returned to the status quo ante, and TPCOA members should receive equitable relief for the losses they sustained.

**{¶ 8}** Toledo appealed our decision in case No. L-13-1074 to the Supreme Court of Ohio, but the parties settled their dispute before the Supreme Court decided whether it would accept jurisdiction. Under the settlement agreement, dated November 18, 2014, Toledo agreed to dismiss its appeal to the Supreme Court and pay the full amount of back

pension pick-ups and health insurance premiums to TPCOA members.  In return, the TPCOA agreed that it would not pursue any arbitration against the city related to the dispute or seek "any costs, interest, attorneys' fees, or further damages in connection with this matter or any other actions relating to the City's 'exigent circumstances' decision," and that it would dismiss the pending action against Toledo in federal court.

{¶ 9} On January 27, 2015, Toledo City Council passed Ordinance 40-15 that provided "[t]hat payment of $1,272,165.60 in settlement of the claims against the City of Toledo is hereby approved."  The city then made payment to the TPCOA members as specified in the settlement agreement and Ordinance 40-15.

{¶ 10} Kenney claims that while the TPCOA and the city litigated their "exigent circumstances" dispute in various courts and forums, he had multiple conversations with the then-mayor, Michael Collins, and "on each such occasion, [he] assured me that if the outcome was favorable to the Union, the Deputy Chiefs would automatically get whatever the Police Captains got, and I shared his assurances with my fellow Deputy Chiefs."  So, after Toledo settled the matter with the TPCOA and made the required payments to the Police Captains, Kenney made a demand to the city for similar payments to Deputy Police Chiefs.  The city refused to make such payments,[1] and relators filed the underlying mandamus action on July 13, 2015.

---

[1] Mayor Collins was deceased by the time Toledo and the TPCOA reached their settlement.

{¶ 11} In their petition for a writ of mandamus, relators seek a writ compelling the city to pay each of them an amount that includes the 7 percent pension pickups that relators paid from September 3, 2009, to March 31, 2010, and the 10 percent pension pickups that they paid from April 1, 2010, to March 15, 2012. They also seek reimbursement for the portion of their health insurance premiums that they paid from April 1, 2010, to March 15, 2012.

{¶ 12} Both sides moved for summary judgment. The trial court denied the city's motion. It also denied the portion of relators' motion seeking judgment on the issue of health insurance co-premiums because the court found that Toledo Municipal Code 2101.70(a) does not contemplate payment of health insurance premiums. On the issue of pension pick-ups, the trial court granted summary judgment to relators, finding that relators have a clear legal right to receive pension pick-ups in parity with Police Captains for the relevant timeframes, and the city has a clear legal duty to pay the pension pick-ups.

{¶ 13} Both sides have appealed the trial court's order. The city argues that the trial court erred when it found that it owed relators back pension pick-ups, while relators contend that the trial court erred by not including health insurance premiums in the amount the city owes them.

{¶ 14} In its brief, the city sets forth three assignments of error:

> 1. THE TRIAL COURT ERRED AS A MATTER OF LAW IN
> GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF/CROSS-

6.

APPELLANT WHERE THE CITY HAD NO CLEAR AND UNAMBIGUOUS DUTY UNDER TOLEDO MUNICIPAL CODE 2101.70(a) TO PAY THEM PENSION PICK-UP CONTRIBUTIONS AFTER SETTLING LITIGATION WITH THE TOLEDO POLICE COMMAND OFFICERS ASSOCIATION.

2. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF/CROSS-APPELLANT REQUIRING THE CITY TO PAY MONIIES [sic] TO THEM UNDER THE "BASE ANNUAL SALARIES" PROVISION OF THE TOLEDO MUNICIPAL CODE WHERE THE CLAIM WAS BARRED BY THE STATUTE OF LIMITATIONS.

3. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF/CROSS-APPELLANT WHERE THERE WAS AN ISSUE OF FACT AS TO WHETHER THE DOCTRINE OF LACHES BARRED SOME OR ALL OF THEIR CLAIMS.

{¶ 15} Relators set forth one assignment of error in their cross-appeal:

On this uncontested record, the trial court erred in its determination that T.M.C. §2101.32 and not §2101.70(a) controlled the insurance co-premiums the City could charge deputy police chiefs, resulting in their

being charged a higher co-premium than police captains were required to pay as part of their total compensation.

## II. Law and Analysis

{¶ 16} An appellate court reviews summary judgment de novo, employing the same standard as the trial court. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The court can grant a motion for summary judgment only when the moving party demonstrates:

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 17} The party seeking summary judgment must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but

8.

must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). The opposing party must do so using "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *." Civ.R. 56(C). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 827, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A.  Relators Timely Filed Their Claims

{¶ 18} We begin by addressing Toledo's second assignment of error, in which it argues that relators' claims are barred by the applicable statute of limitations.

{¶ 19} The trial court found that because relators' claims against Toledo are based upon Toledo Municipal Code 2101.70(a), which guarantees Deputy Police Chiefs parity with Police Captains regarding "any pension pick-ups, lump sums, and allowances* * *," the six-year statute of limitations of R.C. 2305.07 is applicable to relators' claims.  R.C. 2305.07 provides that "an action* * * upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued." The trial court concluded that the relators' claims are timely because they filed their initial complaint on July 13, 2015, which was within six years after their claims accrued on September 3, 2009, as required by R.C. 2305.07.

9.

**{¶ 20}** Toledo, however, argues that the two-year limitations period of R.C. 2305.11(A), rather than the six-year period of R.C. 2305.07, applies.  Under R.C. 2305.11(A), "an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued."  Toledo argues that relators' mandamus action is "essentially a pay dispute brought under the salary provision of the Municipal Code" and because they are "alleging that they were under-paid," this is the functional equivalent of an employee lawsuit for unpaid "minimum wages."  Toledo's proposed interpretation of "minimum wages," however, is far too broad and conflicts with both the particular and common usage of that phrase.

**{¶ 21}** When construing a statute, we read words and phrases in context and according to their "common usage," and we construe words and phrases "that have acquired a technical or particular meaning, whether by legislative definition or otherwise" according to that meaning.  R.C. 1.42.  We find, as the trial court did, that the phrase "minimum wages" has a more narrow, particular meaning as stated by the Supreme Court of Ohio in *Harris v. Atlas Single Ply Systems*, 64 Ohio St.3d 171, 593 N.E.2d 1376 (1992).  Moreover, this particular meaning also comports with common usage of the phrase—or, as stated by the court, the definition of "minimum wages" that is ascribed by "most American adults."  *Id.* at 173.

10.

**{¶ 22}** In *Harris*, the Ohio Department of Industrial Relations filed suit on behalf of former employees to recover money their former employer allegedly owed them under Ohio's prevailing wage law. *Id.* at 171. The Supreme Court considered whether a claim for "minimum wages" under R.C. 2305.11(A) could encompass a claim for failure to pay prevailing wage rates for work on public improvements. *Id.* at syllabus. The court differentiated "prevailing wages" from "minimum wages," as that phrase is used in R.C. 2305.11(A), and recognized that "[t]he term 'minimum wages' denotes a specified hourly wage guaranteed to all qualified workers under federal and Ohio law. It is a dollar and cents amount readily cited by most American adults—$4.25 at the time of the decision. R.C. Chapter 4111." *Id.* at 173. The court then found that the phrase "minimum wages" is not broad enough to encompass a claim for failure to pay prevailing wages, and therefore the two-year statute of limitations of R.C. 2305.11(A) was inapplicable.

**{¶ 23}** Similarly here, the phrase "minimum wage" under R.C. 2305.11(A)—as that phrase is defined in *Harris* and commonly understood by "most American adults"—is not broad enough to encompass relators' claims against Toledo for pension pick-ups and health insurance co-premiums. Although Toledo argues to the contrary, it relies upon two pre-*Harris* cases that are largely inapposite.

**{¶ 24}** Toledo claims that *State ex rel. Gingrich v. Fairfield City School District Board of Education*, 18 Ohio St.3d 244, 480 N.E.2d 485 (1985) supports its broad interpretation of "minimum wages." In *Gingrich,* substitute teachers sought back pay based on an earlier decision from the Supreme Court of Ohio that entitled them to more

11.

years of teacher-service credit, which then moved them to higher levels on the salary schedule. *Id.* at 244. The Supreme Court determined that the six-year statute of limitations set forth in R.C. 2307.07, rather than the two-year statute of limitations of R.C. 2305.11(A), applied because the version of the Fair Minimum Wage Standards Act in effect at the time excluded elementary school teachers from the definition of "employee." *Id.* at 245. In reaching that conclusion, however, the Supreme Court stated that the substitute teachers' "salaries can be considered wages under the definition provided in R.C. 4111.01(B)[2] * * *" and noted that the statutes upon which the substitute teachers based their claims specified minimum salary levels. *Id.* The city analogizes this case to *Gingrich* in two ways: (1) relators' salaries are the same type of compensation as the substitute teachers' salaries and thus are "wages" and (2) relators base their claims on Toledo Municipal Code 2101.70(a), which, like the statutes the substitute teachers relied on in *Gingrich*, contains minimum salary levels for Deputy Police Chiefs.

{¶ 25} The city's reliance on *Gingrich*, however, is misplaced. Although Toledo Municipal Code 2101.70(a) contains the base salary schedule for Deputy Police Chiefs, relators (unlike the substitute teachers in *Gingrich*) are not claiming that they were entitled to higher base salaries from September 2009, to May 2012. Rather, relators are seeking reimbursement for certain payments that they claim Toledo should have made on

---

[2] We note that R.C. Chapter 4111 was amended in 2007 to conform to Article II, Section 34a, Ohio Constitution, which was approved by voters at the general election on November 7, 2006. The current version of R.C. 4111.01 does not define "wages."

12.

their behalf. Thus, this case is not one where the relators are seeking "payment of unpaid minimum wages"—especially in light of the Supreme Court of Ohio's more-recent interpretation of "minimum wages" in *Harris*. Moreover, to the extent that *Gingrich* referred to the Fair Minimum Wage Standards Act, R.C. 4111, for the meaning of both "employee" and "minimum wage," it is consistent with *Harris*.

{¶ 26} The other case relied upon by Toledo, *Ebright v. City of Whitehall*, 8 Ohio App.3d 29, 31, 455 N.E.2d 1307 (10th Dist.1982), is similarly inapposite. In that case, police officers brought a class action for overtime pay. The court found that "[t]he specific subject matter in this case is overtime compensation and therefore R.C. 2305.11(A) is controlling." *Id.* at 32 (noting that R.C. 2305.11(A) applies to any "action by an employee for the payment of unpaid minimum wages, *unpaid overtime compensation* or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation\* \* \*"). In contrast, this is not a case for unpaid overtime pay.

{¶ 27} We find, therefore, that the trial court correctly found that relators filed their claims within the applicable six-year statute of limitations of R.C. 2305.07. Accordingly, the city's second assignment of error is not well-taken.

## B. Relators' Claims are not Barred by Laches

{¶ 28} Next, we address the city's third assignment of error. In it, the city contends that, even if the six-year statute of limitations of R.C. 2305.07 applies, there remains a genuine issue of material fact regarding whether relators' claims are barred by laches. Relators counter that the city did not show that it was prejudiced by relators'

13.

delay in bringing suit, so the trial court properly found that laches did not prevent summary judgment.

{¶ 29} Laches is a party's failure to assert a right for an unreasonable and unexplained period of time under circumstances that cause prejudice to the opposing party. *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984). Laches is available to a defending party even though the proceeding is commenced within the relevant statute of limitations. *A&B Constrs., Inc. v. McWhorter*, 12th Dist. No. CA86-02-010, 1986 Ohio App. LEXIS 8819, *15 (Oct. 27, 1986). Delay alone is an insufficient basis to support a laches defense, however; the party asserting the defense must also show that it was materially prejudiced by the opposing party's delay. *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus. Material prejudice exists when the defendant shows (1) the loss of evidence helpful to the defendant's case or (2) a change in the defendant's position that would not have occurred if the plaintiffs had asserted their rights sooner. *Junkins v. Spinnaker Bay Condo. Assn.*, 6th Dist. Ottawa Nos. OT-01-006 and OT-01-007, 2002-Ohio-872, ¶ 85 (Mar. 1, 2002).

{¶ 30} Laches is an affirmative defense. *State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 299, 685 N.E.2d 1251 (1997). In the context of a motion for summary judgment, the party asserting the affirmative defense has the burden of producing sufficient evidence in support of its defense to show that a genuine issue of material fact remains. *JPMorgan Chase Bank v. Swan*, 6th Dist. Lucas No. L-14-1186,

14.

2015-Ohio-1056, ¶ 17, citing *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 18.

{¶ 31} Application of laches is within the sound discretion of the trial court. *Bellamy v. Bellamy*, 6th Dist. Erie No. E-98-034, 2000 Ohio App. LEXIS 2082 (May 19, 2000). Therefore, we review the trial court's decision on the application of laches for an abuse of discretion. *Id.* Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).

{¶ 32} Here, we find that the trial court did not abuse its discretion in finding that relators' claims are not barred by laches. Toledo does not set forth any evidence that it was materially prejudiced by relators' delay in bringing suit. Toledo merely argues that it would have revised Toledo Municipal Code 2101.70(a) before this litigation arose if relators had asserted their claims earlier. It does not otherwise argue that the delay caused the loss of any evidence that would have been helpful to its case, or that Toledo changed positions in any way that would not have occurred if relators had filed their claims sooner. *Junkins* at ¶ 85.

{¶ 33} Accordingly, the equitable doctrine of laches does not apply to this case, and Toledo's third assignment of error is not well-taken.

## C. The Trial Court's Summary Judgment Decision was Proper

{¶ 34} Finally, we address the city's first assignment of error and relators' cross-assignment of error, which are both related to the trial court's substantive summary-judgment ruling on the relators' mandamus action.

{¶ 35} To be entitled to a writ of mandamus, a relator must establish three separate elements by clear and convincing evidence: (1) the relator has a clear legal right to the requested relief, (2) the opposing party has a clear legal duty to provide the relief, and (3) the relator lacks an adequate remedy in the ordinary course of the law. *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 18, citing *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, and *State ex rel. Cleveland Right to Life v. State Controlling Bd.,* 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.3d 185, ¶ 2.

{¶ 36} In its first assignment of error, Toledo claims that the trial court erred by concluding that it had a clear legal duty to pay relators' pension pick-ups (and that relators had a corresponding clear legal right to receive such payments) under Toledo Municipal Code 2101.70(a). In relators' sole assignment of error, it contends that the trial court erred in concluding that they had no clear legal right to receive insurance co-premiums in parity with Police Chiefs under that same provision. We find no merit to either argument.

16.

### 1. Pension Pick-ups from September 3, 2009, and March 31, 2010

{¶ 37} Between September 3, 2009, and April 1, 2010, the relators—all Deputy Police Chiefs— received 3 percent pension pick-ups while Police Captains received 10 percent pension pick-ups.

{¶ 38} Toledo Municipal Code 2101.70(a), states: "Police Deputy Chiefs shall automatically receive any pension pick-ups, lump sums, and allowances on the same basis as those provided to Police Captains as part of the Captains' total compensation." This language of this statute is clear and unambiguous: Police Deputy Chiefs are "automatically" entitled to receive the same pension pick-ups that Toledo provides to Police Captains.

{¶ 39} Toledo argues that relators do not have a clear legal right to pension pick-ups during this time period because their claims are barred by the statute of limitations or, in the alternative, the doctrine of laches. But, as stated above, relators filed their claims within the applicable six-year statute of limitations of R.C. 2305.07 and the doctrine of laches is not applicable to this case. Toledo does not otherwise attempt to excuse their payment of a lower pension pick-up rate to Deputy Police Chiefs than to Police Captains during this time.

{¶ 40} Accordingly, the trial court correctly found that relators have a clear legal right to receive, and the city has a clear legal duty to pay, a 7 percent pension pick-up—i.e., the difference between the 3 percent pick-up they actually received and the 10 percent pension pick-up they were entitled to receive under Toledo Municipal Code

17.

2101.70(a)—for the time period between September 3, 2009, and March 31, 2010.   The

trial court properly granted judgment in relators' favor and did not err in issuing a writ of

mandamus compelling the city's compliance with Toledo Municipal Code 2101.70(a)

and ordering it to pay each relator the unpaid 7 percent pension pick-ups for September 3,

2009, through March 31, 2010.

## 2.  Pension Pick-ups from April 1, 2010, to March 15, 2012

{¶ 41} Between April 1, 2010, and March 15, 2012, neither relators nor Police

Captains received any pension pick-ups from Toledo in the wake of Ordinance 103-10,

which declared "exigent circumstances" to address the city's immediate "financial

crisis."

{¶ 42} Because the CBA in effect between the city and the TPCOA required the

city, among other things, to pay Police Captains a 10 percent pension pick-up, the

TPCOA filed several grievances and court actions against Toledo on behalf of its

members.  As already discussed, the TPCOA and Toledo then spent several years

embroiled in litigation over the "exigent circumstances" measures.  Eventually, after this

court ruled in favor of the TPCOA in *Toledo Police Command Officers Assn.*, 6th Dist.

Lucas No. L-13-1074, 2014-Ohio-4341, the parties reached a global settlement

agreement on November 18, 2014, and shortly thereafter, Toledo City Council passed

Ordinance 40-15 providing that "payment of $1,272,165.60 in settlement of the claims

against the City of Toledo is hereby approved."   Relevant here, pursuant to the parties'

18.

settlement, Toledo paid the full amount of the unpaid 10 percent pension pick-ups that had been suspended as of April 1, 2010, to Police Captains.

{¶ 43} Relators claim that, under Toledo Municipal Code 2102.70(a), they are entitled to receive 10 percent pension pick-ups for April 1, 2010, through March 15, 2012, on the same basis as Toledo provided to Police Captains through the 2014 settlement. In response, Toledo argued that because the Police Captains received these monies through settlement, the payments were not provided as part of the Police Captains' "total compensation" as required by Toledo Municipal Code 2101.70(a). Toledo also claimed that it is not clear whether it did, in fact, even owe Police Captains 10 percent pension pick-ups during this time period because it dismissed its appeal of our case, *Toledo Police Command Officers Assn.*, 2014-Ohio-4341, to the Supreme Court of Ohio as part of the settlement agreement.

{¶ 44} The trial court found that under Toledo Municipal Code 2101.70(a), relators have a clear legal right to receive the unpaid 10 percent pension pick-ups during this time period because the plain and unambiguous language of the statute states that "Police Deputy Chiefs shall automatically receive any pension pick-ups, *lump sums*, and allowances on the same basis as those provided to Police Captains as part of the Captains' total compensation." (Emphasis added). The trial court reasoned that the settlement payment was a "lump sum" that was provided "as part of the Captains' total compensation" for two reasons: (1) the amount that each TPCOA member received was directly tied to the 10 percent pension pick-up that was owed for work performed for the

19.

city, and (2) the city was found to have wrongfully withheld this amount from the Police Captains' total compensation package for several years, and it could not now argue that the settlement payment did not represent owed compensation. We agree with the trial court's conclusion, but base our decision on Toledo's obligation to pay "pension pick-ups."

{¶ 45} Relevant here, Toledo Municipal Code 2101.70(a) clearly and unambiguously provides that relators are automatically entitled to receive "pension pick-ups" on the same basis as provided to Police Captains "as part of the Captains' total compensation." *See State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996), citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584, 651 N.E.2d 995 (1995) (If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.).

{¶ 46} On appeal, Toledo argues that Toledo Municipal Code 2101.70(a) would require it to provide the unpaid 10 percent pension pick-ups to relators *only if* the statute expressly stated that Deputy Police Chiefs are entitled to parity with Police Captains for "proceeds derived from the settlement of a disputed case," which the statute does not say. Toledo also relies upon the language of Ordinance 40-15, which approved payments to TPCOA members "in settlement" but did not expressly state that the payments were to be considered part of TPCOA members' total compensation. Toledo argues that city council's omission of any reference to compensation in Ordinance 40-15 shows that there

is "no clear and convincing evidence that the settlement was intended to be part of the TPCOA members['] total compensation." Finally, Toledo argues that whether or not it actually owed TPCOA members anything is "still contested" because the city abandoned its appeal of our decision *Toledo Police Command Officers*, 2014-Ohio-4341, to the Supreme Court of Ohio. We find no merit to these contentions, and address them in reverse order.

{¶ 47} In *Toledo Police Command Officers*, 2014-Ohio-4341, we upheld the trial court's ruling that Police Captains were entitled to, among other things, the 10 percent pension pick-ups that the city wrongfully withheld due to the "exigent circumstances" ordinance effective April 1, 2010. It is axiomatic that, whether Toledo agrees with it or not, the case is still good law and binding on the city, even though it abandoned its appeal to the Supreme Court of Ohio.

{¶ 48} Second, it is immaterial that Ordinance 40-15, accepting and approving Toledo's settlement with the TPCOA, does not expressly state that the settlement payments were to be made as part of the TPCOA members "total compensation." The settled dispute between the TCPOA and Toledo unquestionably centered on whether the city, by passing the "exigent circumstances" Ordinance 103-10, unlawfully withheld compensation, including pension pick-ups, that was otherwise owed to TPCOA members under the CBA. Indeed, Toledo fails to acknowledge that Ordinance 103-10 expressly recognized that the exigent circumstances measures were focused on cutting "***labor compensation costs***" because these costs represented a majority of the city's general fund

21.

expenditures. Ordinance 103-10 ("Labor compensation costs, including both wages and benefits, now compromise approximately 79% of the City Department's 2010 General Fund expenditures.") And, as the trial court recognized, the amount that each TPCOA member received is correlated to the 10 percent pension pick-ups that they were each owed as compensation.

{¶ 49} Finally, in light of these findings, it is clear that the 2014 settlement represented "pension pick-ups" that were owed "as part of the Captains' total compensation." Toledo cannot claim otherwise simply because it paid this money to the Police Captains in settlement, after years of litigation, rather than paying the pension pick-ups when due under the CBA. The relators, who were Deputy Police Captains at the time, are entitled to parity under Toledo Municipal Code 2101.70(a)

{¶ 50} Relators have a clear legal right to receive, and the city has a clear legal duty to pay, 10 percent pension pick-ups from April 1, 2010, to March 15, 2012. The trial court properly granted summary judgment in relators' favor and did not err in issuing a writ of mandamus compelling the city's compliance with Toledo Municipal Code 2101.70(a) and ordering it to pay each relator 10 percent pension pickups for the period from April 1, 2010, to March 15, 2012.

{¶ 51} Having found no error in the trial court's summary judgment decision, we find that the city's first assignment of error is not well-taken.

22.

### 3. Health Insurance Co-Premiums

{¶ 52} Relators allege in their cross-assignment of error that the trial court erred in denying their motion for summary judgment on their claim for unpaid health insurance co-premiums. They claim that Toledo Municipal Code 2101.70(a) entitles Deputy Police Chiefs to complete parity with Police Captains in terms of "total compensation," which necessarily includes health insurance co-premiums. Toledo argues, in response, that Toledo Municipal Code 2101.70(a) only requires parity in terms of "pension pick-ups, lump sums, and allowances," and none of these categories include health insurance co-premiums. We agree with Toledo.

{¶ 53} Toledo Municipal Code 2101.70(a) provides a base salary schedule for Deputy Police Chiefs, and then provides:

> The foregoing rates shall be maintained at eleven (11%) greater than Police Captains' rates at corresponding years of service. Further, Deputy Police Chiefs shall automatically receive any pension pick-ups, lump sums, and allowances on the same basis as those provided to Police Captains as part of the Captains' total compensation. This shall not be considered to include any payments to Captains under the Career Enhancement Program.

{¶ 54} Relators claim that "pension pick-ups, lump sums, and allowances" refers to all of the elements of compensation that the city is obligated to pay police officers of any rank with only two express exceptions: base salary and Career Enhancement Program. They then argue that because there are only two express exceptions, city

council necessarily intended Toledo Municipal Code 2101.70(a) to require parity for Deputy Police Chiefs in terms of *all* other items of Captains' total compensation, including health insurance co-premiums.

{¶ 55} Relators' argument would have merit if Toledo Municipal Code 2101.70(a) stated that Deputy Police Chiefs are entitled to "automatically receive <u>all compensation</u> on the same basis [as Police Captains,]" instead of what it does state:  i.e., Deputy Police Chiefs are entitled to "automatically receive <u>any pension pick-ups, lump sums, and allowances</u> on the same basis [as Police Captains.]"   The canon of construction expressio unius est exlusio alterius—the express inclusion of one thing implies the exclusion of the other—compels us to conclude that city council did not intend Toledo Municipal Code 2101.70(a) to require parity between Deputy Police Chiefs and Police Captains for anything other than "pension pick-ups, lumps sums, and allowances."

{¶ 56} It is obvious that health insurance co-premiums are not "pension pick-ups." Moreover, although the city paid the Police Captains a "lump sum" settlement payment that included payment for wrongfully withheld health insurance co-premiums, we do not believe that this fact, alone, is dispositive.  Just as Toledo cannot avoid its obligation to pay the relators for "pension pick-ups" just because it paid these monies in settlement rather than when they were due under the CBA, the relators also cannot claim to be entitled to parity in terms of health insurance co-premiums, which are otherwise not listed in Toledo Municipal Code 2101.70(a), based solely on the timing of their payment to Police Captains.  Thus, the salient issue is whether the disputed health insurance

24.

co-premiums can be considered "allowances" under Toledo Municipal Code 2101.70(a). We find, as the trial court found, that health insurance co-premiums are not "allowances" under that code provision.

{¶ 57} Chapter 2101 of the Toledo Municipal Code governs the city's administrative and managerial staff and, if possible, we must construe the various sections of Chapter 2101 in pari materia, which means "in the same manner." *Black's Law Dictionary* 911 (10th Ed.2014). *See In re Z.R.*, 144 Ohio St.3d 380, 384, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 19 (a "body of laws governing the same subject must be read in pari materia."), citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 7. Chapter 2101 specifically delineates various "allowances" to be included in Deputy Police Chiefs' compensation including safety equipment (Toledo Municipal Code 2101.63); clothing allowance (Toledo Municipal Code 2101.64); police stress allowance (Toledo Municipal Code 2101.67); and travel, clothing maintenance, and training allowance (Toledo Municipal Code 2101.69). Accordingly, insurance co-premiums are not an "allowance" as that term is expressly used in other provisions of Chapter 2101 of the Toledo Municipal Code.

{¶ 58} Moreover, health insurance co-premiums are expressly provided for, and treated differently than, "allowances" under Chapter 2101. Toledo Municipal Code 2101.01(c) defines the classifications of employees who "comprise the Exempt Service and are the management level, supervisory and confidential staff * * *," and includes Deputy Police Chiefs but not Police Captains. "For purposes of this Chapter of the Code,

the term 'employee' refers to all persons in the Exempt Service in classifications listed in Section 2101.01." Toledo Municipal Code 2101.02(a). Health insurance for city employees, including Deputy Police Chiefs, is governed by Toledo Municipal Code 2101.32, which includes a cost schedule for health insurance premiums that employees must pay. Toledo Municipal Code 2101.32(c)(iv). It does not make sense to conclude that Toledo Municipal Code 2101.70(a) should be interpreted to impose a cost schedule for Deputy Police Chiefs' health insurance premiums that is different than the applicable cost schedule that is expressly contained in Toledo Municipal Code 2101.32(c)(iv).

{¶ 59} Thus, when Toledo Municipal Code 2101.70(a) is harmonized with the rest of Chapter 2101, it is clear that the term "allowances" does not include health insurance co-premiums.

{¶ 60} In sum, relators have failed to set forth clear and convincing evidence that health insurance co-premiums are "pension pick-ups," "lump sums," or "allowances," under Toledo Municipal Code 2101.70(a). Thus, the trial court properly denied their motion for summary judgment on their mandamus claim for these monies. Relators' cross-assignment of error is not well-taken.

### D. Remand to Trial Court

{¶ 61} Finally, we note that while we affirm the trial court's decision in full, we remand the matter to the trial court to perform the mechanical task of calculating relators' damages.

26.

**{¶ 62}** Generally speaking, "[W]here the issue of liability has been determined, but a factual adjudication of relief is unresolved, the finding of liability is not a final appealable order * * *." *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989). There is an exception to this rule, however: "a judgment not completely determining damages is a final appealable order where the computation of damages is mechanical and unlikely to produce a second appeal because only a ministerial task similar to assessing costs remains." *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 546, 684 N.E.2d 72 (1997).

**{¶ 63}** Our review of the trial court's order convinces us that it is a final appealable order. Based on the exhibits in the motions for summary judgment, it appears that the determination of the pension pick-ups owed to each relator is ministerial and can be calculated based on relators' salaries during the relevant time periods. Nevertheless, the trial court did not include in its entry the damages to which each relator is entitled.

**{¶ 64}** For the sake of clarity, we remand this case to the trial court for the limited purpose of entering an order on the damages to which each relator is entitled, i.e., the unpaid 7 percent pension pick-ups—representing the difference between the 3 percent pick-up that relators actually received and the 10 percent pension pick-up that they were entitled to receive—for the time period between September 3, 2009, and March 31, 2010; and the unpaid 10 percent pension pick-ups for the time period between April 1, 2010, and March 15, 2012.

27.

## E. Conclusion

**{¶ 65}** Based on the record before us, relators' claims were not barred by the applicable six-year statute of limitations or laches. Relators have a clear legal right to payment of 10 percent pension pickups from September 3, 2009, to March 15, 2012, but do not have a clear legal right to payment of any health insurance co-premiums. Accordingly, the trial court properly granted relators' motion for summary judgment and issued a writ of mandamus on the issue of pension pick-ups, properly denied relators' motion on the issue of health insurance co-premiums, and properly denied the city's motion for summary judgment.

**{¶ 66}** Although we find that the trial court's entry is a final appealable order, we remand this matter to the trial court for the calculation of the damages owed to each relator because those amounts were not included in the trial court's journal entry.

**{¶ 67}** The May 23, 2017 judgment of the Lucas County Court of Common Pleas is affirmed. The matter is remanded to the trial court for the entry of the issue on damages. The parties are ordered to share equally in the costs of this appeal pursuant to App.R. 24.

Judgment affirmed and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                          JUDGE

James D. Jensen, J.              

                                                _____
Christine E. Mayle, P.J.                          JUDGE
CONCUR.

                                                _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.